CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

6/4/2019

JULIA C. DUDLEY, CLERK
BY:   s/ CARMEN AMOS
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### Lynchburg Division

| | |
|---|---|
| **WALKER T. SIGLER** | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | ) **Civil Action No.** __6:19CV00039__ |
| | ) |
| **EDWARD GEORGE FERRON, JR.** | ) **JURY TRIAL DEMANDED** |
| | ) |
| **and** | ) |
| | ) |
| **SAVANNAH L.M. SIMMONS** | ) |
| **Defendants** | ) |

## COMPLAINT

The Plaintiff, Walker T. Sigler ("Mr. Sigler" or "Plaintiff"), by counsel, files this Complaint and respectfully moves the Court for judgment against the Defendants, individually, and jointly and severally.   In support, Plaintiff states as follows:

### Introduction

1.       In this action, the Plaintiff brings claims under federal law – for defendants' violations of his clearly-established rights under the Fourth and Fourteenth Amendments to the United States Constitution – and under state law, for gross negligence by Defendants Ferron and Simmons, and for battery by Defendant Simmons.

2.       At approximately 1:30 a.m. on February 17, 2018, Walker Sigler was shot through the closed front door of his own home.  This shooting occurred while Mr. Sigler's wife, who was eight months pregnant, and their two young sons, six and three years old, slept just upstairs  in their home at 2109 Link Road in Lynchburg.   As further discussed below, Defendants Edward George Ferron Jr. ("Defendant Ferron") and Savannah L.M. Simmons ("Defendant Simmons"), officers of the Lynchburg Police Department ("LPD"), shot into the Siglers' home.  Mr. Sigler was struck, and catastrophically and permanently

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

injured, by a shot fired by Defendant Simmons through the closed front door of the Sigler home.

3.      Just before those fateful shots were fired, Defendants Ferron and Simmons, and fellow LPD officers Brian Anderson ("Officer Anderson") and Austin Rowland ("Officer Rowland"), were executing an unconstitutional warrantless entry and seizure of the Siglers' home. No exigent circumstances existed to justify warrantless entry or seizure. Prior to Mr. Sigler being shot, Defendants Ferron and Simmons, and Officers Anderson and Rowland, had approached the Siglers' home, with loaded guns drawn, and had deployed in a line at the front stoop of the Siglers' home in firing stances, with their loaded guns pointed at the Siglers' front door.  There was no justification in law and no reason in fact for their decision to draw their loaded firearms and, without a warrant and without any threat to their safety, to enter the Siglers' home.

4.      Defendants deployed outside the Siglers' home in this fashion solely because in riding past the Siglers' home at approximately 1:00 a.m. on February 17, 2018, Defendant Ferron had observed that the front door was ajar.  By their approach to the Siglers' home as described in brief above and in more detail below, Defendants were acting in violation of Mr. Sigler's Fourth Amendment rights and in violation of well-settled Virginia law interpreting such rights, which did not then permit, and still does not permit, police to make a warrantless entry into a residence simply because the front door of the residence is observed to be open.

5.      The wrongful actions of the Defendants culminated in gunshots unreasonably fired by both Defendants.  Defendant Ferron's shots narrowly missed hitting Mr. Sigler. Defendant Simmons unreasonably fired through the Siglers' closed front door; that shot struck Mr. Sigler in the right upper thigh, shattering his right femur and causing other severe

LICHTENSTEIN
LAW GROUP plc
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

and permanent injuries and conditions, including but not limited to severe and permanent vision losses.

6.      This action is brought under 42 U.S.C. §§ 1983 and 1988, and under the laws of the Commonwealth of Virginia.

### Jurisdiction and Venue

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as to the federal causes of action in Counts I and II, and supplemental jurisdiction under 28 U.S.C. § 1367, as to the state law causes of action in Counts III and IV.

8.      Venue in this Court is proper under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the Plaintiff's claims against the Defendants occurred in this District.

### Parties

9.      At all relevant times, Mr. Sigler has been a citizen of the United States of America, and of the Commonwealth of Virginia, and entitled to all legal and constitutional rights afforded to such citizens.  He has at all relevant times resided in Lynchburg, Virginia, at 2109 Link Road.

10.      At all relevant times, including February 16 and 17, 2018, Defendants Ferron and Simmons were employed by the City of Lynchburg as police officers and acted under color of state law and in the course and scope of their employment. Defendants are sued in their individual capacities.

### Facts Alleged

11.      On Friday, February 16, 2018, Mr. Sigler's wife, Kate Sigler, who was 8 months pregnant at the time, and the couple's two sons, ages 3 and 6, were in bed asleep by roughly 9:30 p.m. Mr. Sigler went downstairs to the den (main level of their home, behind the kitchen) to watch TV.  He fell asleep on the couch in the den, with the TV on.



LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

12.     The front door of the Siglers' home did not always latch properly, and would sometimes come ajar. At some point while Mr. Sigler was in the den, the front door came open partway.     Mr. Sigler was not aware at the time that the door had come ajar.

13.     That evening, Defendant Ferron and Officer Rowland were patrolling, with Officer Rowland driving.   Defendant Ferron was a field training officer and Officer Rowland was Defendant Ferron's trainee officer.

14.     At approximately 1:00 a.m. on February 17, 2018, Defendant Ferron and Officer Rowland drove by the Siglers' home a third time and noticed that the storm door was open and that the front door appeared to be ajar. Upon information and belief, Defendant Ferron and Officer Rowland had driven by the home twice earlier that evening and noticed that the storm door was open. They had taken no action in regard to the open storm door and had made no indication of concern or report to LPD dispatch ("LynComm") or to the Sigler family.

15.     However, at approximately 1:00 a.m., Defendant Ferron and Officer Rowland parked their patrol car directly adjacent to Link Road at the end of the Siglers' driveway. Neither Defendant Ferron nor Officer Rowland called the Siglers' land line to check on their condition. The Siglers' had a land line which was publicly listed.

16.     There were no signs of forced entry at the home. Both of the family's two cars were parked directly in front of the front door. There were no external signs of a burglary.  There were no calls for help or indications of wrongful activity in or outside of the house.   There were no sounds coming from inside the house to indicate anything wrong was happening inside.   No neighbors had reported anything suspicious or out of the ordinary to police.  There was no visible or audible evidence of a burglary or of any violence inside the Siglers' home.   In short, there were no signs of trouble or of anything amiss inside or outside the Siglers' home.

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

17.      Shortly after 1:00 a.m., Defendant Ferron directed Officer Rowland to report the "open door" to LynComm and ask for backup.  On information and belief, Officer Rowland made such report.

18.      In reporting the "open door," Officer Rowland did not identify any actual or perceived threat, danger, trouble or criminal activity around the Siglers' home.  And, in fact, there was not any actual or perceived threat, danger, trouble or criminal activity around the Siglers' home.   Further, neither Mr. Sigler nor Mrs. Sigler, were under charges for, or even under suspicion of, having committed any crime. The only observed circumstance was that the front door was ajar.

19.      While Defendant Ferron and Officer Rowland waited for the "backup" officers they had called to arrive, Defendant Ferron directed Officer Rowland to have LynComm "run the plates" on the two vehicles parked in the Siglers' driveway. LynComm confirmed that both vehicles belonged to Mr. and Mrs. Sigler, the residents of the home.

20.       Notwithstanding that the vehicles were confirmed to belong to the Siglers, Defendant Ferron and Officer Rowland disregarded that information and took no action whatever to attempt to reach the Siglers, including by failing even to call their land line telephone number.  Defendant Ferron speculated instead that the Siglers were away from home and had either driven another vehicle or were traveling with others who had picked them up.

21.      While Defendant Ferron and Officer Rowland waited for "backup" to arrive for the "open door," they did not see, hear, discuss, report or receive any report of any danger or threat inside or outside the Siglers' home.

22.      Defendant Ferron and Officer Rowland also did not communicate with the Siglers' neighbors, and they did not call the Siglers' home telephone or cellphones, even after learning that the vehicles in the driveway belonged to the Siglers.   Rather, they simply

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

waited for the "backup" they had called to arrive – mostly standing, without any cover, and conversing with each other outside their patrol car in the Siglers' driveway to the side of their home.

23.     Defendant Simmons and Officer Anderson and LPD Officer Seth Reed ("Officer Reed") responded separately to the call for "backup" to the Sigler home for the "open door."

24.     Defendant Ferron was the senior officer at the scene and commanded the other officers.

25.     Defendant Ferron directed Officer Reed to go to the rear of the Siglers' home.

26.     As Officer Reed passed by the kitchen window on the front of the Siglers' home, Officer Reed reported to Defendant Ferron that he saw a light in a room beyond the kitchen and that he thought a TV was on.

27.     Without going over and looking through the same window himself, Defendant Ferron disregarded what Officer Reed had said.  He speculated instead that the light was probably from a wifi router, but did not do anything to investigate that.

28.     Defendant Ferron had decided when he saw the partly-open front door at the Siglers' home that he would order and lead a warrantless approach and entry into the Siglers' home.   He did this without there being any signs of violence, trauma or threat; without talking to any of the Siglers' neighbors; without shining any patrol car spotlights on the house; without calling the Siglers' landline telephone; without making a voice-amplified announcement; without seeking cover and "calling out" from a distance; and without determining that any actual threat existed to persons or property in the Siglers' home or to himself and/or his fellow officers. Defendant Ferron disregarded any information provided

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

to him that was inconsistent with his decision.  On information and belief, he also did not consult with any available supervisors.

29.     With Officer Reed at the back of the Siglers' house, Defendant Ferron directed and led Defendant Simmons, and Officers Anderson and Rowland, to draw their loaded firearms in the guns-drawn approach to Mr. and Mrs. Sigler's home.  Pursuant to Defendant Ferron's order, Defendant Ferron, Defendant Simmons, and Officers Anderson and Rowland lined up at the front stoop of the Sigler home, right outside the partly-open front door, with guns drawn, and ready to fire.

30.     No disagreement or protest was voiced by Defendant Simmons nor any other officer present to Defendant Ferron's order, nor did any of them suggest any alternate course of action.

31.     None of the Siglers' neighbors had called the police about anything going on at or around the Siglers' home on February 16-17, 2018.  There had not been any reports of suspicious behavior in the area in that time frame.

32.     Defendants Ferron and Simmons (and Officers Anderson, Rowland and Reed) had not concluded that any actual threat existed to any of them, to their fellow officers, and/or to persons or property in the Siglers' home.

33.     Nevertheless, at approximately 1:30 a.m., Defendants Ferron and Simmons, and Officers Anderson and Rowland, were deployed on the front stoop of the Siglers' home with their guns drawn, in firing stances.

34.     The Siglers' house was dark (but for the light identified by Officer Reed); there were no sounds coming from the house; there were no signs of forced entry; and the cars in the driveway belonged to the Siglers and had not been tampered with.

35.     There was no basis, including no exigent circumstances, for police to approach the Siglers' home with their guns drawn and/or to make a warrantless entry to the

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

Siglers' home.  Defendant Ferron considered none of the many proper alternative courses of action that would have put no one, not the Siglers nor the officers, at risk.   Instead, Defendant Ferron's orders and direction, and his and Defendant Simmons' actions pursuant thereto, created the danger that put Mr. Sigler in harm's way and caused his severe injuries.

36.     When Defendants Ferron and Simmons, and Officers Anderson and Rowland, were deployed on and around the front stoop of the Siglers' home with their guns drawn, in firing stances, Defendant Ferron directed Officer Rowland to call out (unamplified).  Officer Rowland did so and shortly thereafter repeated the same.

37.     However, the announcement did not wake Mrs. Sigler or the Siglers' children, who were asleep in the upstairs of the home just above the front door area. Mr. Sigler had been asleep on the couch in the den, on the other side of the house.

38.     Mr. Sigler awakened from his sleep in the den where he had earlier fallen asleep while watching TV, thinking he may have heard noises from an area toward the front of the house. Mr. Sigler walked from the den on the back side of the house, through the kitchen on the front side of the house, and toward the front door of the house. He had not been able to identify what he thought were voices and called out "What?"   Immediately before that, the Siglers' dog barked once.  Mr. Sigler would have been visible from the outside of the front of the house through the kitchen and dining room windows as he walked toward the front door area. Defendant Ferron did not direct anyone to look through the windows of the home and neither Defendant Ferron nor Defendant Simmons nor the other officers were positioned to look through those windows. Instead, Defendant Ferron had directed all officers at the front of the house to draw their loaded weapons and to line up directly outside the front door.

39.     Mr. Sigler's call out of the word "What?", and the single bark by the Siglers' dog that immediately preceded it, were heard by Defendants Ferron and Simmons.

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

40.     Even though the dog had barked and Mr. Sigler had called out "What?" Defendant Ferron did not abort the warrantless entry, and did not tell the other officers to stand down or even to lower weapons and move back from the front door. Neither Defendant Ferron nor Defendant Simmons nor the other officers used anything to provide themselves cover so as not to be exposed, notwithstanding that the family's two cars sat right in front of the front door.

41.     As Mr. Sigler approached the front door and noticed that it was ajar, he peered around it. When he did so, he saw the barrel of a gun.

42.     Mr. Sigler reacted reasonably and understandably – he tried to close the front door, a purely *defensive* action to *protect* himself and his pregnant wife and young children. Mr. Sigler did not say or do anything threatening or of an offensive nature. He simply quickly shut the door.

43.     Mr. Sigler did not pose any threat to Defendants Ferron and Simmons, nor to the other officers, nor did Defendants Ferron and Simmons, or any of the other officers, have a reasonable belief that they were in danger.

44.     Notwithstanding all of the above-referenced facts, Defendants Ferron did not direct the officers to abort the warrantless entry, nor to holster or even lower their weapons, nor to step back and allow themselves cover and the opportunity to understand the situation he had taken no steps to understand.

45.     When Mr. Sigler first shut the door, the door did not latch, but instead rebounded to a partly open position. With a second push, Mr. Sigler shut the door and it latched and remained shut.

46.     Neither the initial shutting or the second, successful shutting of the door put Defendant Ferron, Defendant Simmons, nor the other officers in any actual or any reasonably perceived danger.

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

47.     Nonetheless, at the first shutting of the door and its rebound opening, Defendant Ferron unreasonably fired his Glock semi-automatic police pistol directly into the Sigler home, directly next to where Mr. Sigler had peered around the door. This shot lodged in the wall of the Siglers' foyer.

48.     After Mr. Sigler had shut the door and it remained shut, Defendant Simmons unreasonably fired her Glock semi-automatic police pistol twice, and Defendant Ferron again without reason fired his weapon.

49.     Defendant Ferron's second shot went through the closed door on a trajectory through the adjacent living room and pierced the wall at the back of the Siglers' living room.

50.     One of Defendant Simmons' shots was fired directly toward the area where Mr. Sigler had successfully shut the door. This shot lodged in the door frame to the left (from the officer's perspective) of the closed front door.

51.     Defendant Simmons' other shot was fired through the closed front door of the Sigler home and struck Mr. Sigler in his upper right thigh, shattering his femur and proximately causing severe and permanent injuries and sequelae.  Mr. Sigler collapsed onto the floor behind the closed front door, writhing and screaming in pain.

52.     Mr. Sigler's only actions after seeing the barrel of a gun pointed at him when he peered around the door were (1) trying to slam the door shut and (2) shutting the door after it rebounded.  These purely defensive actions did not in any way threaten Defendants Ferron and Simmons, nor Officers Anderson and Rowland, and could not reasonably have been viewed as threatening by Defendants or the other officers.

53.     Hearing Mr. Sigler's continued screaming, because he was in excruciating pain from the gunshot wound, Defendants Ferron and Simmons, and Officers Anderson and Rowland, then entered the Siglers' home, still with guns drawn.

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

54.     Mrs. Sigler had been awakened by the commotion and had come to the top of the stairs.  She saw Mr. Sigler lying on the floor, screaming in excruciating pain from his gunshot wound. Mrs. Sigler was obviously very pregnant, but officers would not let Mrs. Sigler go to Mr. Sigler's side.

55.     Mr. Sigler repeatedly asked the officers why they had shot him; they never answered him.

56.     After investigation by Virginia State Police and a special prosecutor, Defendants Ferron and Simmons were indicted by a City of Lynchburg grand jury on state-law felony criminal charges of reckless handling of a firearm, unlawful wounding, and unlawfully firing into an occupied dwelling.   Defendants Ferron and Simmons ultimately entered pleas of no contest to a misdemeanor charge of reckless handling of a firearm.

57.     As a direct and proximate result of the unconstitutional, grossly negligent and otherwise improper actions and/or omissions of Defendants Ferron and Simmons, Mr. Sigler has suffered severe, continuing and permanent injuries and sequelae, including: a comminuted (crushing) femur fracture that required multiple surgeries and that caused life threatening compartment syndrome that required additional surgery; blood loss that caused bilateral optic nerve strokes leaving him with permanent vision losses; physical changes, including gait changes and the effects therefrom, from the femur fracture that have resulted in leg, hip and back pain and that will in the future require joint replacement surgeries and associated therapies and treatments; physical and emotional pain and suffering; post-traumatic stress disorder, depression and anxiety; past and future medical expense; loss of earnings and loss of earning capacity; and other injuries and damages.

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

## CAUSES OF ACTION

## COUNT I

**Warrantless, Non-Exigent Seizure and Use of Excessive Force
In Violation Of The Fourth And Fourteenth Amendments:
Defendants Ferron and Simmons In Their Individual Capacities**

58.     Plaintiff hereby incorporates and re-alleges ¶¶ 1-57 as if set forth in full.

59.     Defendants Ferron and Simmons acted at all relevant times as police officers employed by the City of Lynchburg and, as such, acted under color of state law.

60.     Defendants Ferron and Simmons unconstitutionally seized Mr. Sigler without a warrant when they illegally and unreasonably approached and deployed themselves around the Siglers' front door with loaded guns drawn, pointed at the front door and ready to fire, as the prelude to a warrantless entry into the Siglers' home.  The sole basis for such actions by Defendants was that Defendant Ferron had observed the front door of the Siglers' home to be partly open.

61.     Defendants Ferron and Simmons had no warrant for and no probable cause to seize Mr. Sigler, and no reasonable belief that warrantless entry was necessary to prevent the destruction of relevant evidence or the escape of a suspect, or that warrantless entry was necessary to prevent the frustration of any legitimate law enforcement effort.  Further, there were no pending criminal charges against Mr. Sigler; and he was not even suspected of having committed any crime.

62.     Entry was not necessary exigently for the safety of Mr. Sigler or his family, nor for the safety of Defendants or Officers Anderson or Rowland; Defendants did not reasonably believe otherwise.

63.     It was clearly established as of February 17, 2018 that police entry into a private residence without probable cause or a warrant violates the Fourth Amendment to the United States Constitution ("Fourth Amendment"), absent exigent circumstances.  It was

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

clearly established in Virginia as of that date that the mere presence of an open door, without more, did not constitute an exigent circumstance nor otherwise provide any exception to that rule.

64.      Such had been established in Virginia in 2005, when the Virginia Court of Appeals held in *Kyer v. Commonwealth*, 45 Va. App. 475, 482 (2005) that the open door of a residence in and of itself does not give rise to a reasonable belief that entry by the police is necessary to prevent harm to persons or property. *Kyer* is still the law in Virginia.  It has never been overruled by the Virginia Supreme Court nor reversed legislatively by the Virginia General Assembly.

65.      Defendants Ferron and Simmons could not reasonably have been unaware that the law of Virginia prohibited warrantless entry by police solely on the basis of an open door at a residence.  Nonetheless they acted as described.

66.      It was similarly clearly established as of February 17, 2018 that multiple uniformed armed police officers acting without a warrant, pointing loaded weapons at an unarmed person in his home without reasonable suspicion of criminal activity or reasonable perception of danger to either person or property, is an unwarranted use of those weapons and is excessive force that constitutes an unreasonable seizure that violates the Fourth Amendment.

67.      It was unreasonable and a use of excessive force for Defendants Ferron and Simmons, and Officers Anderson and Rowland to be deployed around the Siglers' partly-open front door with loaded weapons drawn and pointed at the door.  There were no signs of forced entry. There were no external signs of a burglary.  No one inside the house had called for help.   There were no sounds coming from inside the house to indicate anything wrong was happening inside.   No neighbors had reported anything suspicious or out of the ordinary to police.  There was no visible or audible evidence of violence, trauma or any

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

criminal or other improper activity inside the Siglers' home.   In short, there were no signs of trouble or of anything amiss inside or outside the Siglers' home.   In fact, when he reported the "open door" to LynComm, Officer Rowland did not identify any actual or perceived threat, danger, trouble or criminal activity around the Siglers' home.  And, in fact, there was not any actual or perceived threat, danger, trouble or criminal activity around the Siglers' home.   Further, neither Mr. Sigler nor Mrs. Sigler were under charges for, or even suspicion of, having committed any crime. They were law-abiding citizens sleeping in their own home along with their two young children.   When Officer Rowland asked LynComm to "run the plates" on the two vehicles parked in the Siglers' driveway, LynComm confirmed that both vehicles belonged to the Siglers.  Those vehicles had not been tampered with.  Defendants unreasonably ignored all these facts. Defendants Ferron and Simmons also did not communicate with the Siglers' neighbors, and they did not even attempt to call the Siglers' home telephone, even after learning that the vehicles in the driveway belonged to the Siglers and that a TV appeared to be on in the den.   Defendants (and Officers Anderson and Rowland) were deployed around the partly-open front door for one reason only – that the door was partly open.  That was not a sufficient reason under law.

68.     Reasonable and safe alternatives to guns-drawn deployment around the front door were completely ignored.  Defendants did not turn on colored flashing police vehicle lights or use their patrol car spotlights and did not establish a perimeter and make a voice-amplified "announcement" at a distance and from behind cover.

69.     No exception, including exigent circumstances, to the presumptive per se unreasonableness of a warrantless entry or to the unreasonable seizure of a person existed here.

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

70.     Additionally, the guns-drawn approach and deployment around the front stoop of the Siglers' home violated the LPD's own directive on the drawing and displaying of weapons by officers.

71.     Mr. Sigler's right to be free from use of excessive force by police was clearly established as of February 17, 2018.

72.     Defendants' violations of Mr. Sigler's Fourth Amendment rights, as described, were a proximate cause of Mr. Sigler's injuries.   But for those violations, Defendants would not have been deployed outside and just a few feet from the Siglers' front door, and the opportunity for Defendant Simmons to unreasonably fire the shot through the closed front door that struck Mr. Sigler would not have existed.

73.     Defendants acted unreasonably and used excessive force.

74.     Defendants violated Mr. Sigler's rights under the Fourth and Fourteenth Amendments.

75.     Defendants' violations of Mr. Sigler's constitutional rights proximately caused Mr. Sigler to suffer severe, continuing and permanent injuries and sequelae, including: a comminuted (crushing) femur fracture that required multiple surgeries and that caused life threatening compartment syndrome that required additional surgery; blood loss that caused bilateral optic nerve strokes leaving him with permanent vision losses; physical changes, including gait changes and the effects therefrom, from the femur fracture that have resulted in leg, hip and back pain and that will in the future require joint replacement surgeries and associated therapies and treatments; physical and emotional pain and suffering; post-traumatic stress disorder, depression and anxiety; past and future medical expense; loss of earnings and loss of earning capacity; and other injuries and damages.

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

## COUNT II

### Warrantless, Non-Exigent Seizure and Use of Excessive Force
### In Violation Of The Fourth Amendment:
### Defendants Ferron and Simmons In Their Individual Capacities

76.     Plaintiff hereby incorporates and re-alleges ¶¶ 1-75 as if set out in full.

77.     Defendants unreasonably and unconstitutionally used deadly force and unreasonably and unconstitutionally seized Mr. Sigler by firing their weapons at and/or through the front door of the Siglers' home.

78.     There was no reasonable basis, under the LPD use of force directive or otherwise, for Defendants to fire their weapons in the direction of the Siglers' front door.

79.     Defendants at all relevant times were acting under color of state law as LPD officers.

80.     Defendants acted unreasonably and used excessive force in firing their weapons.

81.     Defendants violated Mr. Sigler's rights under the Fourth and Fourteenth Amendments.

82.     Defendants' violations of Mr. Sigler's constitutional rights proximately caused Mr. Sigler to suffer severe, continuing and permanent injuries and sequelae, including: a comminuted (crushing) femur fracture that required multiple surgeries and that caused life threatening compartment syndrome that required additional surgery; blood loss that caused bilateral optic nerve strokes leaving him with permanent vision losses; physical changes, including gait changes and the effects therefrom, from the femur fracture that have resulted in leg, hip and back pain and that will in the future require joint replacement surgeries and associated therapies and treatments; physical and emotional pain and suffering; post-traumatic stress disorder, depression and anxiety; past and future medical expense; loss of earnings and loss of earning capacity; and other injuries and damages.

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

## COUNT III

### Gross Negligence:  Defendant Ferron

83.     Plaintiff incorporates and realleges ¶¶ 1 through 82 as if set forth herein in full.

84.     Defendant Ferron owed Mr. Sigler a duty to exercise reasonable care in his role as a police officer and field training officer in handling the "open door" that Defendant Ferron observed at the Sigler family's home on February 17, 2018.

85.     On information and belief, Defendant Ferron knew on February 17, 2018 that *Kyer* was the law in the Commonwealth of Virginia and prohibited a warrantless entry into the Siglers' home based solely on an open door.

86.     On information and belief, on February 17, 2018, when he ordered Defendant Simmons and Officers Anderson and Rowland to accompany him, without a warrant, in deploying around the Siglers' partly-open front door, with loaded weapons drawn and pointed at the partly-open door and ready to fire, Defendant Ferron:

a.     had not heard, nor had reported to him by any other responding officer, any unusual sounds from the Sigler home;

b.     had not seen, nor had reported to him by any other officer, any sign of forced entry into the Siglers' home;

c.     knew that LynComm had confirmed that the cars in the Siglers' driveway belonged to the Siglers and had no appearance of being tampered with;

d.     knew that none of the Siglers' neighbors had reported anything to the police that evening about anything suspicious at the Siglers' home;

e.     knew that he had been advised by Officer Reed that a TV appeared to be on and had deliberately discounted and ignored that information;

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

      f.      did not fear for his own safety or the safety of Defendant Simmons, or Officers Anderson, Rowland or Reed, and had not been advised by any of them that they had such fears;

      g.      knew or reasonably should have known under such circumstances that an approach to and deployment around the partly-open front door with loaded guns drawn and pointed at the front door from fighting/combat stances would violate the LPD's written directive on drawing and/or displaying firearms.

87.      Notwithstanding the above, Defendant Ferron ordered Defendant Simmons, and Officers Anderson and Rowland to accompany him in the warrantless approach to and deployment around the partly-open front door with loaded guns drawn and pointed at the front door from ready-to-fire fighting/combat stances, for the purpose of effecting a warrantless entry into the Siglers' home.

88.      It was unreasonable for Defendants Ferron and Simmons, and the other officers, to be deployed around the Siglers' partly-open front door with loaded weapons drawn and pointed at the door. There were no signs of forced entry. There were no external signs of a burglary. No one inside the house had called for help. There were no sounds coming from inside the house to indicate anything wrong was happening inside. No neighbors had reported anything suspicious or out of the ordinary to police. There was no visible or audible evidence of violence, trauma, or any criminal or other improper activity inside the Siglers' home. In short, there were no signs of trouble or of anything amiss inside or outside the Siglers' home. In fact, when he reported the "open door" to LynComm, Officer Rowland did not identify any actual or perceived threat, danger, trouble or criminal activity around the Siglers' home. And, in fact, there was not any actual or perceived threat, danger, trouble or criminal activity around the Siglers' home. Further, neither Mr. Sigler nor Mrs. Sigler were under charges for, or even suspicion of, having

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

committed any crime. They were law-abiding citizens sleeping in their own home along with their two young children.   When Officer Rowland asked LynComm to "run the plates" on the two vehicles parked in the Siglers' driveway, LynComm confirmed that both vehicles belonged to the Siglers.  Those vehicles had not been tampered with.  This was unreasonably ignored. Defendants Ferron and Simmons also did not communicate with the Siglers' neighbors, did not turn on colored flashing patrol car lights or use patrol car spotlights, and they did not even attempt to call the Siglers' home telephone, even after learning that the vehicles in the driveway belonged to the Siglers and that a TV appeared to be on in the den. Defendants Ferron and Simmons were deployed around the partly-open front door for one reason only – that the door was open.  That was not a sufficient reason under law.

89.     By his own acknowledgment in the above-discussed criminal proceedings, Defendant Ferron never considered doing otherwise and in particular never considered: (i) checking with nearby neighbors; (ii) calling the Siglers;  or (iii) establishing a perimeter and making a voice-amplified "announcement" at a distance and from behind cover, *rather than* deploying only a few feet away from the open door with loaded guns drawn, pointed at the door, and ready to fire.

90.     Defendants Ferron and Simmons had no reasonable basis in the circumstances to use deadly force.   Mr. Sigler took no offensive action.  He called out "What?" as he approached the front door.  He quickly shut the front door after he peered around the edge of the door and saw the barrel of a gun.  When the door came open after he first shut it, Mr. Sigler shut it again and it stayed shut.  Mr. Sigler did not come outside.  He had no weapon.  He never verbally threatened Defendants or anyone else. Mr. Sigler's actions were not in any way threatening, and reasonable police officers in the subject circumstances would not have perceived a threat and would not have reacted by firing at the front door and at the closed front door.

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

91.     Defendant Ferron responded to Mr. Sigler's purely defensive act of closing the front door by unreasonably shooting twice.  The latter shot pierced the closed front door.  Mr. Sigler's purely defensive act did not threaten Ferron or the other officers and could not have reasonably been perceived as a threat.  There was no reasonable basis or justification in fact or law, under the LPD use of force directive or otherwise, for Defendant Ferron to repeatedly fire his weapon towards the front door.

92.     Defendant Ferron acted with an utter disregard of prudence that amounted to a complete neglect of Mr. Sigler's safety.  His actions and omissions, as described, demonstrated want of even scant care and amounted to the absence of even slight diligence.  Accordingly, he was grossly negligent.

93.     Defendant Ferron's gross negligence was a direct and proximate cause of Mr. Sigler's severe, continuing and permanent injuries and sequelae, including: a comminuted (crushing) femur fracture that required multiple surgeries and that caused life threatening compartment syndrome that required additional surgery; blood loss that caused bilateral optic nerve strokes leaving him with permanent vision losses; physical changes, including gait changes and the effects therefrom, from the femur fracture that have resulted in leg, hip and back pain and that will in the future require joint replacement surgeries and associated therapies and treatments; physical and emotional pain and suffering; post-traumatic stress disorder, depression and anxiety; past and future medical expense; loss of earnings and loss of earning capacity; and other injuries and damages.

## COUNT IV

### Gross Negligence: Defendant Simmons

94.     Plaintiff incorporates and realleges ¶¶ 1 through 93 as if fully set forth herein.

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

95.     Defendant Simmons owed Mr. Sigler the duty to exercise ordinary care in her actions as a police officer at the Siglers' residence on February 17, 2018.   Defendant Simmons breached this duty and was grossly negligent in such breach.

96.     Defendant Simmons knew on February 17, 2018, and could not reasonably have been unaware, that it was contrary to the settled law of Virginia as set out in *Kyer* for police to make a warrantless entry into a residence solely on the basis of a door to the residence being open.

97.     Defendant Simmons knew on February 17, 2018 that, under the circumstances, a warrantless approach to and deployment around the Siglers' partly-open front door with loaded weapons drawn and pointed at the partly-open door violated the LPD use of force directive provisions on drawing/displaying weapons.   Nonetheless, Defendant Simmons proceeded with Defendant Ferron, and Officers Anderson and Rowland, in exactly such an approach and deployment at the Siglers' home on February 17, 2018.

98.     It was unreasonable for Defendants Ferron and Simmons, and the other officers, to be deployed around the Siglers' partly-open front door with loaded weapons drawn and pointed at the door.  There were no signs of forced entry. There were no external signs of a burglary.  No one inside the house had called for help.   There were no sounds coming from inside the house to indicate anything wrong was happening inside.   No neighbors had reported anything suspicious or out of the ordinary to police.  There was no visible or audible evidence of violence, trauma or any criminal or other improper activity inside the Siglers' home.   In short, there were no signs of trouble or of anything amiss inside or outside the Siglers' home.   In fact, when he reported the "open door" to LynComm, Officer Rowland did not identify any actual or perceived threat, danger, trouble or criminal activity around the Siglers' home.  And, in fact, there was not any actual or perceived threat, danger, trouble or criminal activity around the Siglers' home.   Further,

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

neither Mr. Sigler nor Mrs. Sigler were under charges for, or even suspicion of, having committed any crime. They were law-abiding citizens sleeping in their own home along with their two young children.   When Officer Rowland asked LynComm to "run the plates" on the two vehicles parked in the Siglers' driveway, LynComm confirmed that both vehicles belonged to the Siglers.  Those vehicles had not been tampered with.  This was unreasonably ignored. Defendants Ferron and Simmons also did not communicate with the Siglers' neighbors, and they did not even attempt to call the Siglers' home telephone, even after learning that the vehicles in the driveway belonged to the Siglers and that a TV appeared to be on in the den.   Defendants Ferron and Simmons were deployed around the partly-open front door for one reason only – that the door was open.  That was not a sufficient reason under law.

99.     Reasonable and safe alternatives to guns-drawn deployment around the front door were completely ignored.  Defendants did not turn on colored flashing police vehicle lights or use their patrol car spotlights and did not establish a perimeter and make a voice-amplified "announcement" at a distance and from behind cover.

100.     Defendants Ferron and Simmons had no reasonable basis in the circumstances to use deadly force.   Mr. Sigler took no offensive action.  He called out "What?" as he approached the front door.  He quickly shut the front door after he peered around the edge of the door and saw the barrel of a gun.  When the door came open after he first shut it, Mr. Sigler shut it again and it stayed shut.  Mr. Sigler did not come outside.   He had no weapon.  He never verbally threatened Defendants or anyone else. Mr. Sigler's actions were not in any way threatening, and reasonable police officers in the subject circumstances would not have perceived a threat and would not have reacted by firing at the front door and at the closed front door.

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

101.     There was no reasonable basis, under the LPD use of force directive or otherwise, for Defendant Simmons to fire her weapon in the direction of the Siglers' front door.

102.     Defendant Simmons reacted unreasonably to Mr. Sigler's purely defensive act of shutting his front door and to Defendant Ferron's grossly negligent act of firing his weapon, including upon information and belief by firing her weapon simply because Defendant Ferron had fired his weapon.  Defendant Simmons unreasonably and grossly negligently fired twice towards the closed front door of the Sigler home.  One of the shots she fired pierced the closed door and struck Mr. Sigler, entering his right leg and shattering his femur.

103.     Defendant Simmons acted with an utter disregard of prudence that amounted to a complete neglect of Mr. Sigler's safety.  Her actions and omissions, as described, demonstrated want of even scant care and amounted to the absence of even slight diligence.  Accordingly, she was grossly negligent.

104.     Defendant Simmons' gross negligence was a direct and proximate cause of Mr. Sigler's severe, continuing and permanent injuries and sequelae, including: a comminuted (crushing) femur fracture that required multiple surgeries and that caused life threatening compartment syndrome that required additional surgery; blood loss that caused bilateral optic nerve strokes leaving him with permanent vision losses; physical changes, including gait changes and the effects therefrom, from the femur fracture that have resulted in leg, hip and back pain and that will in the future require joint replacement surgeries and associated therapies and treatments; physical and emotional pain and suffering; post-traumatic stress disorder, depression and anxiety; past and future medical expense; loss of earnings and loss of earning capacity; and other injuries and damages.

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

## Relief Requested

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.      Enter judgment in his favor against the Defendants, jointly and severally, on the claims asserted;

B.      Award Plaintiff compensatory damages against Defendants, jointly and severally, in the amount of Twelve Million Dollars ($12,000,000.00);

C.      Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law; and

D.      Grant him such other relief as is just.

**WALKER T. SIGLER**

By: /s/ John E. Lichtenstein
Counsel

John E. Lichtenstein (VSB #27048)
Gregory L. Lyons (VSB #24037)
Joanna M. Meyer (VSB #86427)
LICHTENSTEIN LAW GROUP PLC
Liberty Trust Building, Suite 400
101 South Jefferson Street (24011)
P.O. Box 601
Roanoke, Virginia 24004-0601
Tel:     (540) 343-9711
Fax:     (540) 343-9713
John.Lichtenstein@lichtensteinlawgroup.com
Greg.Lyons@lichtensteinlawgroup.com
Joanna.Meyer@lichtensteinlawgroup.com
*Counsel for the plaintiff*

LICHTENSTEIN
LAW GROUP PLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601